UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DISTRICT

| | | |
|---|---|---|
| Endless River Technologies LLC, | ) | Case No. 1:18-cv-00936 |
| | ) | |
| Plaintiff, | ) | Judge Donald C. Nugent |
| | ) | |
| vs. | ) | |
| | ) | Jury Trial Demanded |
| Trans Union LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>Second Amended Complaint (█Redacted)</u>**

For its un-redacted amended complaint against Trans Union LLC ("Trans Union"),

Endless River Technologies LLC ("Endless River") states as follows:

**<u>Summary Of Case</u>**

1.     This is an action for damages and injunctive relief to remedy Trans Union's

breach of contract, trade secret misappropriation, conversion, defamation, slander of title,

tortious interference, and violations of the Ohio Uniform Deceptive Trade Practices Act,

and to enjoin Trans Union's possession and use of Endless River's confidential, proprietary,

and trade secret information in breach of the 2014 Development Agreement and Contract

for Services (the "Agreement," a true and accurate copy of which is attached as **Exhibit A**)

between Endless River and Trans Union, and to compel specific performance of that

Agreement by Trans Union.

2.     Trans Union and Endless River entered into the Agreement to develop the

Quote Exchange Program (the "QE Program"), which is a software service to assist

insurance carriers to reduce online acquisition costs by monetizing underperforming web

quoting traffic and simultaneously provide a marketplace for insurance carriers to offer binding quotes to a large pool of customers that fit a desired demographic.

3.     Trans Union terminated the Agreement prior to completion of the development phases set forth in Exhibit A of the Agreement.

4.     The Agreement requires Trans Union to maintain confidential material related to the QE Program as confidential and provides that, upon termination before completion of the project, all intellectual property rights in and to the QE Program reverts to Endless River. The Agreement further requires that, upon termination of the Agreement before completion of the project, Trans Union must distribute all work product deliverables to Endless River.

5.     A significant amount of confidential material relating to the QE Program and Endless River's business was developed during the Agreement and wrongfully remain in the possession and control of Trans Union in violation of Trans Union's contractual and other legal obligations.

6.     Further, Trans Union has falsely stated and misrepresented to third parties that they own the QE Program and that development of the QE Program has been canceled.

7.     Trans Union's misrepresentations relating to Endless River and the QE Program and its failure to turn over to Endless River all of the work product deliverables and other confidential materials as required by the Agreement constitute willful and material breaches of the Agreement, misappropriation of Endless River's trade secret rights, conversion, defamation, slander of title, tortious interference with business expectancy, and violations of the Ohio Deceptive Trade Practices Act.

8.     Endless River seeks injunctive relief to compel Trans Union to immediately discontinue any and all further breaches of the Agreement, misappropriations of Endless River's trade secrets, conversion, defamation, slander of title, tortious interference with business expectancy, and violations of the Ohio Deceptive Trade Practices Act,. Endless River seeks an entry of an order compelling Trans Union to specifically perform all of their ongoing obligations under the Agreement including returning all remaining work product and confidential materials to Endless River, and an award of damages.

### The Parties

9.     Endless River Technologies LLC is an Ohio corporation with a principal place of business in Ohio.

10.     Trans Union LLC is a Delaware limited liability corporation with a principal place of business in Illinois.

### Jurisdiction And Venue

11.     This Court has original subject matter jurisdiction over Endless River's federal trade secret misappropriation claim under the Defend Trade Secret Act under 28 U.S.C. § 1331 because it arises under federal law.

12.     This Court also has subject matter jurisdiction over Endless River's claims under 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs, and has supplemental jurisdiction over Endless River's further claims under 28 U.S.C. § 1367 because those claims are so related to claims in the action within the court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

13. This Court has personal jurisdiction over Trans Union because Trans Union has established the requisite minimum contacts in Ohio. Among other things, Trans Union has transacted business and engaged in a persistent course of conduct in Ohio by, for example, negotiating, entering into and performing obligations under the Agreement in Ohio, providing services in Ohio, and having business locations in Ohio. Trans Union also has knowingly and intentionally caused tortious injury in Ohio by acts and omissions occurring both in Ohio and outside of Ohio by breaching obligations owed to Endless River under the Agreement, misappropriating Endless River's trade secrets, and otherwise engaging in the tortious and improper conduct set forth in this complaint.

14. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Endless River's claims occurred in this district and because Trans Union is subject to personal jurisdiction in this district under Ohio law and therefore "reside" in the Northern District of Ohio according to federal law.

**Relevant Facts**

**A.** **Endless River and its Business**

15. Endless River is a small consulting firm that, among other things, provides business development services, technical operations support, and technical project services related to software development of products in the e-commerce space.

16. Endless River has extensive experience providing consulting services that include producing, designing and delivering online services related to insurance product distribution. This experience includes building start-up and growth-stage companies and managing direct-to-consumer offerings from concept through finished product.

17.     Endless River has earned a reputation for engaging in fair, honest, and ethical business practices.

**B.      Quote Exchange and Endless River's Agreement with Trans Union**

18.     Prior to execution of the Agreement, Endless River conceived of the QE Program as a novel approach to solve inefficiencies in the ecommerce market relating to insurance and financial products.

19.     In or around early 2013, Endless River proposed to enter an agreement with Trans Union to develop and commercialize the QE Program as an online marketing program to provide potential customers with comparative quotes for insurance and financial services products, such as auto insurance policies, from a variety of different carriers.

20.     Trans Union and Endless River executed the Agreement on March 31, 2014. The Agreement identifies the responsibilities of the parties to develop and commercialize the QE Program and the rights and sets forth obligations of the parties upon termination.

21.     The QE Program is the subject of a pending patent application, U.S. Published Application No. US2016/335,726A1 entitled *Quote exchange system and method for offering comparative rates for an insurance product* (the "Quote Exchange Patent").

22.     Endless River is the owner by assignment of all right, title and interest in and to the Quote Exchange Patent, as evidenced by the assignment recorded with the United States Patent and Trademark Office at reel 042542, frame 0746.

23.     Throughout the duration of the Agreement, Endless River performed all of its obligations under the Agreement including acting in a business development capacity to identify potential customers and serving as a technical consultant, product designer, and in a development and IT management role.

24.     Trans Union provided computer equipment to Endless River for facilitating the performance of its obligations. Endless River utilized this computer equipment to generate various materials related to the QE Program, the vast majority of which are work product that is confidential and proprietary to Endless River.

25.     The Agreement provides that the ownership of the intellectual property rights and application rights to the materials identified in the Agreement as Work Product is contingent on the phased development of the QE Program.

26.     Upon termination of the Agreement before completion of the development of the QE Program, all intellectual property rights and application rights to the QE Program revert to Endless River and all work product deliverables must be distributed to Endless River.

27.     The Agreement includes a confidentiality provision under which Trans Union agreed to not disseminate or otherwise use any of Endless River's confidential information except to the extent necessary for Trans Union's performance under the Agreement.

**C.**     **Trans Union Terminates the Agreement**

28.     Trans Union sent a termination letter in October 2017 to Endless River providing notice of termination of the Agreement prior to the completion of the phased development and buyout set forth in Exhibit A to the Agreement. A true and accurate copy of the termination letter is attached as **Exhibit B**.

29.     In addition to terminating the Agreement, Trans Union requested that Endless River agree to modify the terms of the Agreement with respect to, inter alia, ownership of intellectual property and application rights to work product relating to the QE Program.

30.     Additionally, Trans Union unilaterally restricted Endless River's access to computer devices that contain Endless River's confidential materials thereon and demanded Endless River return the computer devices.

31.     The confidential materials that Trans Union has withheld and failed to return includes, but is not limited to, source code for the QE Program, customer lists, customer targets, communications, pricing information such as pricing formulas, profit margins, product drawings, schematics, specifications, blueprints, processes, product models, product designs, compilations of business and financial information, emails,  design documents, presentations, letters, notes, and other documents relating to the QE Program and Endless River's business plans (collectively, the "Endless River Information").

32.     Endless River is the rightful owner of the Endless River Information.

33.     The Endless River Information includes trade secret information.

34.     The Agreement required Trans Union to continue to pay consulting fees to Endless River through 180 days after notice of termination.

35.     Endless River complied with Trans Union's demand for returning the computer devices with the understanding that Trans Union would continue to make payments to Endless River, maintain the Endless River Information thereon in accordance with the terms of the Agreement, and return the Endless River Information as provided in the Agreement.

36.     Endless River requested Trans Union return the Endless River Information as provided in the Agreement. Despite this contractual obligation, Trans Union refused to do so without additional consideration. Trans Union continues to hold the Endless River Information hostage in violation of the Agreement.

**D.**     **Trans Union Interferes with Endless**
         **River's Continued Marketing of the QE Program**

37.     After Trans Union's termination of the Agreement, and with Trans Union's knowledge, Endless River continued to market and worked to further commercialize the QE Program on its own.

38.     Upon information and belief, one or more representatives of Trans Union falsely represented to ███████████████████ ("██"), in or about October 2017 that Trans Union, and not Endless River, owns and controls the QE Program and that all development of the QE Program has been canceled.

39.     Upon information and belief, Trans Union falsely represented to ██████ ██ ("████████") in or about March 2017 that Trans Union, and not Endless River, owns and controls the QE Program and that all development of the QE Program has been canceled.

40.     Upon information and belief, one or more representatives of Trans Union has falsely represented to other potential clients of Endless River between October 2017 and the date hereof that Trans Union, and not Endless River, owns and controls the QE Program and that all development of the QE Program has been canceled.

41.     Upon information and believe, ███, ████████ and other potential Endless River believed, and were misled, confused, and deceived by, Trans Union's false representations regarding Endless River's ownership of and control over the QE Program and the further development of the QE Program.

42.     Trans Union's statements that it, and not Endless River, owns and controls the QE Program was false and clouded its title to the QE Program because Endless River, not

Trans Union, owns and has the legal right to possess and control the Endless River Information.

43.     Trans Union's statements that it, and not Endless River, owns and controls the QE Program further was false and clouded its title to the QE Program because Endless River, not Trans Union, owns the Quote Exchange Patent.

44.     Trans Union's statements that all development of the QE Program had been cancelled was false because Endless River has not cancelled, and does not intent to cancel, its continued development of the QE Program.

45.     Upon information and belief, Trans Union did not disclose to ████████, ████ or other third parties that Endless River owns and has the legal right to possess and control the Endless River Information, that Endless River owns the Quote Exchange, and that Endless River has not cancelled its continued development of the QE Program.

46.     Endless River traveled to various portions of the United States including to cities in Texas and Nevada to meet with potential clients to pursue business relationships and to market the QE Program, and potential clients expressed a sincere interest in the QE Program and an interest in a partnership with Endless River.

47.     Both ████████ and ████ ultimately declined to pursue a business relationship with Endless River.

48.     Upon information and belief, ████████'s and ████'s decision to not pursue a business relationship with Endless River was due, at least in part, to Trans Union's false and defamatory statements and misrepresentations  regarding the continued development of the QE Program and ownership of the QE Program.

49.     Consistent with the Agreement, Endless River requested that Trans Union execute an assignment document evidencing Endless River's rights in and to the QE Program. A true and accurate copy of which is attached as **Exhibit C**.

50.     Trans Union refused to execute the assignment document and wrongfully maintains that it is the owner of the QE Program notwithstanding Endless River's ownership rights under the Agreement.

51.     Trans Union continues to refuse to execute the assignment document in violation of the Agreement unless Endless River provide to it additional monetary consideration.

52.     Trans Union remains in possession, custody, and control of the Endless River Information and other work product related to the QE Program without Endless River's permission or consent and in violation of the Agreement.

53.     Trans Union has also failed to turn over the Endless River Information and other work product deliverables that remain under Trans Union's possession, custody, and control as required by the Agreement.

54.     Trans Union continues to use Endless River's trade secrets by holding the Endless River Information hostage in an attempt to demand further consideration from Endless River in violation of the Agreement by preventing Endless River from further developing and commercializing the QE Program.

55.     Upon information and belief, Trans Union views Endless River's trade secrets as something it can handle as it wishes, without regard to Endless River's interests, and Trans Union has used, and continues to use, Endless River's trade secrets to develop and commercialize software, products and services to gain commercial advantages.

56.     Trans Union further has used Endless River's trade secrets to Trans Union's commercial advantage and Endless River's commercial disadvantage by depriving Endless River of its ability to register its copyrights in and to the source code for the QE Program.

57.     Trans Union's unauthorized statements to ██████ and ██ regarding the QE Program and its failure to turn over the Endless River Information constitutes willful and material breaches of the Agreement, misappropriation of Endless River's trade secret rights, conversion, defamation, slander of title, tortious interference with business expectancy, and violations of the Ohio Deceptive Trade Practices Act.

58.     Accordingly, Endless River seeks injunctive relief to compel Trans Union to immediately discontinue any and all further breaches of the Agreement,  misappropriations of Endless River's trade secrets, and violations of Endless River's other rights under controlling law.

59.     By refusing to turn over and maintaining possession and control of the Endless River Information and by claiming to own the QE Program to prospective business partners without Endless River's consent, Trans Union has, at a minimum, breached: its obligations of confidentiality, to return all tangible information upon the termination of the Agreement, and to execute and deliver instruments of conveyance as requested by Endless River and as expressly required by the Agreement.

60.      As a result of Trans Union's multiple contractual breaches and its misappropriation of Endless River's trade secrets, Trans Union has caused Endless River substantial damage and irreparable harm that is likely to, and inevitably will, continue unless and until it is enjoined from further possessing or using Endless River's confidential,

proprietary, and trade secret information relating to the QE Program in violation of the Agreement and be compelled to specifically perform all of its obligations thereunder.

## Count One
### *Breach of Contract*

61.     Endless River incorporates by reference all allegations in all preceding and successive paragraphs of this complaint as if fully rewritten herein.

62.     The Agreement constitutes a valid and enforceable written contract between Endless River and Trans Union and Endless River has performed all of its obligations to Trans Union under that agreement.

63.     Trans Union has and continues to breach the Agreement by, among other acts and omissions, possessing and controlling the Endless River Information without Endless River's permission or consent and by failing to promptly return all Endless River Information to Endless River.

64.     Endless River has been damaged by Trans Union's breaches to the Agreement.

65.     Unless enjoined and compelled to specifically perform its obligations under the Agreement, Trans Union's ongoing breaches of the Agreement threaten Endless River with irreparable harm for which it has no adequate remedy at law.

66.     As a direct and proximate result of Trans Union's breaches of the Agreement, Endless River has suffered, and continues to suffer loss of its valuable rights and intellectual property assets, including loss of customers and other damages, in an amount to be determined but reasonably believed to exceed $75,000.

## Count Two
*Trade Secret Misappropriation*
*(Defend Trade Secrets Act 18 U.S.C. § 1836 et seq.)*

67.     Endless River incorporates by reference all allegations in all preceding and successive paragraphs of this complaint as if fully rewritten herein.

68.     The Endless River Information constitutes trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq.

69.     The Endless River Information is related to a product or service used in, or intended for use in, interstate or foreign commerce.

70.     The Endless River Information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

71.     Endless River has taken reasonable measures to keep the Endless River Information secret including advising its agents of the existence of a trade secret, limiting access to the Endless River Information on a "need to know basis" and the confidentiality clause in the Agreement.

72.     Trans Union has used the Endless River Information without Endless River's express or implied consent. Such use includes, but is not limited to, refusing to return the Endless River Information to Endless River to prevent Endless River from further developing and commercializing the QE Program.

73.     Upon information and belief, Trans Union views Endless River's trade secrets as something it can handle as it wishes, without regard to Endless River's interests, and has

used, and continues to use, Endless River's trade secrets to develop and commercialize software, products, and services to gain commercial advantages.

74.     Trans Union further has used Endless River's trade secrets to Trans Union's commercial advantage and Endless River's commercial disadvantage by depriving Endless River of its ability to register its copyrights in and to the source code for the QE Program.

75.     Trans Union, therefore, has misappropriated Endless River's trade secrets by, among other acts and omissions, using Endless River's trade secrets without express or implied consent by a person who at the time of disclosure or use, knew or had reason to know that knowledge of the trade secret was acquired under circumstances giving rise to a duty to limit the use of the trade secret.

76.     Unless restrained and enjoined from engaging in the foregoing and compelled to specifically perform its obligations under the Agreement, it is inevitable that Trans Union will continue using Endless River's confidential, proprietary and trade secret information and that Endless River will suffer loss of valuable intellectual property assets and the loss of customers and other damages.

77.     Unless enjoined and compelled to specifically perform its obligations under the Agreement, Trans Union's ongoing use of Endless River's trade secrets threatens Endless River with irreparable harm for which it has no adequate remedy at law by depriving Endless River of control over and exclusive use of the valuable intellectual property assets comprising Endless River's trade secret information.

78.     As a direct and proximate result of Trans Unions misappropriation, Endless River has suffered, and will continue to suffer, loss of its valuable intellectual property assets

and loss of customers and other damages in an amount to be determined but reasonably believed to exceed $75,000.

## Count Three
*Conversion*

79. Endless River incorporates by reference all allegations in all preceding and successive paragraphs of this complaint as if fully rewritten herein.

80. Endless River owns and has the right to possess the Endless River Information, including all tangible and intangible embodiments thereof, irrespective of whether the Endless River Information qualifies as a trade secret and independent of any use or disclosure of such information by Trans Union.

81. Trans Union has restricted Endless River's access to, and deprived Endless River of possession of, the Endless River Information, including both tangible and intangible embodiments thereof.

82. Trans Union wrongly assumed unauthorized control or dominion over the Endless River Information by restricting Endless River's access to computer devices that contain the Endless River Information, by demanding the return of those computer devices pursuant to the Agreement, and by otherwise failing to return tangible and intangible embodiments of the Endless River Information to Endless River.

83. Endless River has a right to immediate possession of the Endless River Information, absolutely and unconditionally And irrespective of whether the Endless River Information qualifies as a trade secret.

84. Endless River demanded Trans Union return possession of the Endless River Information.

85.     By and through their conduct averred herein, Trans Union has intentionally and wrongfully exercised dominion or control over the Endless River Information and thereby interfered with Endless River's right to access and control it.

86.     Endless River remains unable to access the Endless River Information, including to even file for copyright protection for the source code to the QE Program with the United States Copyright Office, because it remains under the wrongful possession and control of Trans Union.

87.     Trans Union has no license to and no ownership rights in the Endless River Information.

88.     As such, Trans Union has converted the Endless River Information in violation of both Ohio and Illinois law.

89.     As a direct and proximate result of Trans Union's conversion, Endless River has suffered, and will continue to suffer, loss of its valuable intellectual property assets and loss of customers and other damages in an amount to be determined but reasonably believed to exceed $75,000.

### Count Four
*Defamation*

90.     Endless River incorporates by reference all allegations in all preceding and successive paragraphs of this complaint as if fully rewritten herein.

91.     Upon information and belief, Trans Union intentionally made false statements about Endless River as alleged herein.

92.     When Trans Union made its false statements, it knew or should have known that such statements were false.

93.     Trans Union made unprivileged publications of its false statements to multiple third parties.

94.     A reasonable person would have considered Trans Union's false statements to be defamatory. Upon information and belief, third parties have considered Trans Union's false statements to be defamatory.

95.     Trans Union published its false statements to third parties in the context of trying to dissuade the parties to whom they were published from doing business with Endless River by calling into question Endless River's right to engage in its proposed business dealings.

96.     Trans Union's false statements were intended to injure, and in fact have injured, Endless River in its trade, profession, and occupation because they have caused third parties to not engage in or continue to do business with Endless River.

97.     Moreover, Trans Union's false statements have damaged Endless River's reputation for engaging in fair, honest, and ethical business practices.

98.     Trans Union's false statements that it, and not Endless River, owns and controls the QE Program is not susceptible to any innocent meaning because Trans Union does not own or legally have the right to control the QE Program.

99.      Trans Union's false statements that all development of the QE Program had been cancelled is not susceptible to any innocent meaning because Endless River has not cancelled its continued development of the QE Program.

100.    Trans Union acted maliciously because it knew its statements regarding ownership of the QE Program and cancellation of its development and commercialization were false or acted with reckless disregard of their falsity.

101.    Endless River has suffered special damages because Trans Union's false and defamatory statements caused one or more potential clients or partners to decline to enter into or otherwise continue a further business relationship with Endless River.

102.    The special damages that Endless River has suffered as a result of Trans Union's false and defamatory statements are independent, and do not arise out of either party's performance, of the Agreement.

103.    As a direct and proximate result of Trans Union's defamation, Endless River has suffered, and will continue to suffer, loss of its valuable intellectual property assets and loss of customers and other damages in an amount to be determined but reasonably believed to exceed $75,000.

**Count Five**
*Slander of Title*

104.    Endless River incorporates by reference all allegations in all preceding and successive paragraphs of this complaint as if fully rewritten herein.

105.    Trans Union published slanderous statements disparaging Endless River's title to the Endless River Information and the Quote Exchange Patent.

106.    Trans Union's slanderous statements disparaging Endless River's title to the Endless River Information and the Quote Exchange Patent were false.

107.    Trans Union knew or should have known that its slanderous statements disparaging Endless River's title to the Endless River Information and the Quote Exchange Patent were false such that Trans Union published its statements with malice or with reckless disregard for their falsity.

108.    Endless River has suffered special damages because Trans Union's slanderous statements disparaging Endless River's title to the Endless River Information and the Quote

Exchange Patent caused one or more potential clients or partners to decline to enter into or otherwise continue a further business relationship with Endless River.

109.    The special damages that Endless River has suffered as a result of Trans Union's slanderous statements are independent, and do not arise out of either party's performance, of the Agreement.

110.    As a direct and proximate result of Trans Union's slanderous statements, Endless River has suffered, and will continue to suffer, loss of its valuable intellectual property assets and loss of customers and other damages in an amount to be determined but reasonably believed to exceed $75,000.

**Count Six**
*Tortious Interference with Business Expectancy*

111.    Endless River incorporates by reference all allegations in all preceding and successive paragraphs of this complaint as if fully rewritten herein.

112.    Endless River had a reasonable expectation of entering into a valid business relationship with potential clients or partners, including but not limited to ██████ and ██, with respect to the QE Program.

113.    Trans Union had knowledge of Endless River's business expectations related to the QE Program because Endless River informed Trans Union that it intended to continue marketing and commercializing the QE Program.

114.    Trans Union intentionally, materially, unjustifiably and without privilege interfered with Endless River's business expectations by engaging in the wrongful conduct alleged herein, including by breaching its contract with Endless River.

115.    Among its other acts and omissions, Trans Union intentionally, materially, unjustifiably and without privilege interfered with Endless River's business expectations by misappropriating Endless River's trade secrets.

116.    Among its other acts and omissions, Trans Union also intentionally, materially, unjustifiably and without privilege interfered with Endless River's business expectations by converting Endless River's property.

117.    Among its other acts and omissions, Trans Union also intentionally, materially, unjustifiably and without privilege interfered with Endless River's business expectations by making false and defamatory statements to Endless River's potential clients or partners.

118.    Among its other acts and omissions, Trans Union also intentionally, materially, unjustifiably and without privilege interfered with Endless River's business expectations by making slanderous statements disparaging Endless River's title to the Endless River information and the Quote Exchange Patent to Endless River's potential clients or partners.

119.    Trans Union's tortious interference prevented the realization of Endless River's business expectancy with potential clients and partners, including but not limited to ██████████ and ███.

120.    As a direct and proximate result of Trans Union's tortious interference, Endless River has suffered, and will continue to suffer, loss of its valuable intellectual property assets and loss of customers and other damages in an amount to be determined but reasonably believed to exceed $75,000.

**Count Seven**
*Violations of Ohio Deceptive Trade Practices Act*
*(ODTPA - O.R.C. 4165/ et seq.)*

121.    Endless River incorporates by reference all allegations in all preceding and successive paragraphs of this complaint as if fully rewritten herein.

122.    Trans Union's misrepresentations and its concealment, suppression and omission of material facts identified and described herein occurred at least partly in Ohio and violate the Ohio Deceptive Trade Practices Act, O.R.C. 4165, *et seq.*

123.    Such misrepresentations, concealments, suppressions and omissions are material to potential clients or partners of Endless River as they would have acted differently if the actual status of the QE Program was known when approached by Endless River to engage in a business relationship. This includes the material information that Endless River is the rightful owner of the QE Program and that Endless River intends to continue development and commercialization of the QE Program.

124.    Trans Union's misrepresentations, concealments, suppressions, and omissions were completed in the course of its business and have caused a likelihood of confusion or a misunderstanding as to the source, sponsorship, approval, certification, affiliation, connection, or association of the QE Program and Endless River.

125.    Trans Union willfully made such  misrepresentations, concealments, suppressions, and omissions relating to Endless River and the QE Program, knowing it to be deceptive, to induce Endless River's potential customers' reliance, including but not limited to ██████████ and ████ . .

126.    Trans Union's misrepresentations, concealments, suppressions, and omissions regarding Endless River and the QE Program amount to false or misleading representations of fact that are material to Endless River's business.

127.    As a direct and proximate result of Trans Union's violations of the Ohio Deceptive Trade Practices Act, Endless River has suffered, and will continue to suffer, loss of its valuable intellectual property assets and loss of customers and other damages in an amount to be determined but reasonably believed to exceed $75,000.

## Prayer for Relief

WHEREFORE, Endless River prays for entry of judgment in its favor and against Trans Union on each of the foregoing claims as order:

(A)    that Trans Union, its officers, agents, servants, employees and attorneys, and all other persons who are in active concert or participation with them be preliminarily and permanently enjoined from:

> developing or implementing the QE Program for itself or on behalf of any third party without Endless River's express written consent;

> disclosing or using any of Endless River's confidential, proprietary or trade secret information for or on behalf of any third party without Endless River's express written consent;

> otherwise breaching the Agreement or misappropriating any of Endless River's trade secrets; and,

> claiming to third parties that it owns and controls the QE Program and that all development of the QE Program has been canceled.

(B)    that Trans Union be compelled to specifically perform all of its continuing obligations under the Agreement, including:

> promptly returning to Endless River the confidential materials and work product deliverables relating to the QE Program including the source code and all related tangible or electronic documents;

maintaining Endless River's confidential materials relating to the QE Program in confidence and not disclosing information relating thereto to any third party without Endless River's express written consent;

refraining from using Endless River's confidential materials relating to the QE program including the source code for itself or on behalf of any third party without Endless River's express written consent; and

executing all assignments and other documents necessary to transfer all right, title, and interest in and to the Endless River information to Endless River; and,

(C)     Awarding compensatory damages to Endless River;

(D)     Awarding enhanced treble damages to Endless River under all applicable statutes and common law;

(E)     Awarding punitive damages to Endless River;

(F)     Awarding pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

(F)     Awarding lost profits to Endless River;

(G)      Awarding Endless River's attorneys' fees and costs and expenses incurred in connection with this action; and

(H)     that Endless River be awarded such other and further relief as allowed at law or in equity that the Court deems to be appropriate.

Dated:  August 18, 2021             ___/s/Stephen J. Rosenfeld_____
David B. Cupar (OH 0071622)
 *dcupar@mcdonaldhopkins.com*
Stephen J. Rosenfeld (IL 6216769)
 *srosenfeld@mcdonaldhopkins.com*
Mark J. Masterson (OH 0086395)
 *mmasterson@mcdonaldhopkins.com*
Lidia C. Mowad (OH 0097973)
 *lmowad@mcdonaldhopkins.com*
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 │ f 216.348.5474

*Counsel for Endless River Technologies
LLC*

## **Jury Demand**

Endless River Technologies LLC hereby demands a jury trial for all issues so triable.


     /s/ Stephen J. Rosenfeld
*Counsel for Endless River Technologies LLC*

## Certificate of Service

I hereby certify that, on August 18, 2021, a copy of the foregoing was served by email on the following counsel for Trans Union LLC:

Tonya G. Newman
  *tnewman@nge.com*

Courtenay Youngblood Jalics
  *courtenay.youngblood@tuckerellis.com*

    /s/ Stephen J. Rosenfeld
*Counsel for Endless River Technologies LLC*