IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| ENDLESS RIVER TECHNOLOGIES LLC, ) | |
| Plaintiff, ) | CASE NO. 1:18-CV-00936 |
| ) | |
| v. ) | JUDGE DONALD C. NUGENT |
| ) | |
| TRANSUNION LLC, ) | |
| Defendant. ) | **REDACTED FOR PUBLIC FILING** |
| ) | (Jury Demanded) |
| ) | |

### DEFENDANT TRANSUNION, LLC'S
### ANSWER AND AFFIRMATIVE DEFENSES TO
### PLAINTIFF'S  SECOND AMENDED COMPLAINT

Defendant, TransUnion LLC ("TransUnion"), by and through its attorneys, for its answer

and affirmative defenses to the Second Amended Complaint filed by Endless River Technologies

LLC ("Endless River"), hereby states as follows:

### Summary of Case

1.      This is an action for damages and injunctive relief to remedy TransUnion's breach
of contract, trade secret misappropriation, conversion, defamation, slander of title, tortious
interference, and violations of the Ohio Uniform Deceptive Trade Practices Act, and to enjoin
TransUnion's possession and use of Endless River's confidential, proprietary, and trade secret
information in breach of the 2014 Development Agreement and Contract for Services (the
"Agreement," a true and accurate copy of which is attached as **Exhibit A**) between Endless River
and TransUnion, and to compel specific performance of that Agreement by TransUnion.

**ANSWER:**    TransUnion admits that Endless River seeks damages, injunctive relief and specific

performance in this litigation, and further admits that what purports to be a true and accurate – but

incomplete - copy of the Development Agreement and Contract for Services entered into by

TransUnion and Endless River (the "Agreement") is attached as **Exhibit A** to the Complaint.

TransUnion denies any allegations contained in this paragraph that are inconsistent with the

express terms of the Agreement, denies that Endless River is entitled to the relief it seeks, and

denies the remaining allegations contained in this paragraph.

1

2.      TransUnion and Endless River entered into the Agreement to develop the Quote Exchange Program (the "QE Program"), which is a software service to assist insurance carriers to reduce online acquisition costs by monetizing underperforming web quoting traffic and simultaneously provide a marketplace for insurance carriers to offer binding quotes to a large pool of customers that fit a desired demographic.

**ANSWER:**     TransUnion admits that a true and correct copy of the Agreement is attached as

**Exhibit A** to the Complaint, which is the best evidence of the terms and scope of the parties'

Agreement, and denies any allegations contained in this paragraph that are inconsistent with the

express terms of the Agreement.

3.      TransUnion terminated the Agreement prior to completion of the development phases set forth in Exhibit A of the Agreement.

**ANSWER:**     TransUnion admits that it terminated the Agreement, pursuant to the terms of the

Agreement, prior to completion of all of the phases set forth in the Agreement, due to the QE

Program not meeting expectations.

4.      The Agreement requires TransUnion to maintain confidential material related to the QE Program as confidential and provides that, upon termination before completion of the project, all intellectual property rights in and to the QE Program reverts to Endless River.  The Agreement further requires that, upon termination of the Agreement before completion of the project, TransUnion must distribute all work product deliverables to Endless River.

**ANSWER:**     TransUnion admits that a true and correct copy of the Agreement is attached as

**Exhibit A** to the Complaint, which is the best evidence of the terms and scope of the parties'

Agreement, and denies any allegations contained in this paragraph that are inconsistent with the

express terms of the Agreement.

5.      A significant amount of confidential material relating to the QE Program and Endless River's business was developed during the Agreement and wrongfully remain in the possession and control of TransUnion in violation of TransUnion's contractual and other legal obligations.

**ANSWER:**     Denied.

6.     Further, TransUnion has falsely stated and misrepresented to third parties that they own the QE Program and that development of the QE Program has been canceled.

**ANSWER:**     Denied.


7.     TransUnion's misrepresentations relating to Endless River and the QE Program and its failure to turn over to Endless River all of the work product deliverables and other confidential materials as required by the Agreement constitute willful and material breaches of the Agreement, misappropriation of Endless River's trade secret rights, conversion, defamation, slander of title, tortious interference with business expectancy, and violations of the Ohio Deceptive Trade Practices Act.

**ANSWER:**     Denied.


8.     Endless River seeks injunctive relief to compel TransUnion to immediately discontinue any and all further breaches of the Agreement, misappropriations of Endless River's trade secrets, conversion, defamation, slander of title, tortious interference with business expectancy, and violations of the Ohio Deceptive Trade Practices Act,. Endless River seeks an entry of an order compelling TransUnion to specifically perform all of their ongoing obligations under the Agreement including returning all remaining work product and confidential materials to Endless River, and an award of damages.

**ANSWER:**     TransUnion admits that Endless River seeks injunctive relief, specific performance and damages, but denies that Endless River is entitled to the relief it seeks, denies that TransUnion breached the Agreement and denies that TransUnion committed any tort or engaged in any tortious conduct.


## The Parties

9.     Endless River Technologies LLC is an Ohio corporation with a principal place of business in Ohio.

**ANSWER:**     TransUnion lacks sufficient knowledge and information to form a belief as to the truth of the allegations contained in this paragraph and therefore denies same.


10.     TransUnion LLC is a Delaware Limited Liability corporation with a principal place of business in Illinois.

3

**ANSWER:** TransUnion admits that it is organized under Delaware law and admits that it maintains a principal place of business in Illinois. TransUnion denies that it is a limited liability corporation.

## Jurisdiction And Venue

11. This Court has original subject matter jurisdiction over Endless River's federal trade secret misappropriation claim under the Defend Trade Secret Act under 28 U.S.C. § 1331 because it arises under federal law.

**ANSWER:** TransUnion admits that this Court has subject matter jurisdiction over Endless River's federal trade secret misappropriation claim, but denies that Endless River has stated a valid claim for trade secret misappropriation.

12. This Court also has subject matter jurisdiction over Endless River's claims under 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs, and has supplemental jurisdiction over Endless River's further claims under 28 U.S.C. § 1367 because those claims are so related to claims in the action within the court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

**ANSWER:** TransUnion lacks sufficient knowledge and information to form a belief as to whether the parties are diverse, but on information and belief admits that the amount in controversy exceeds $75,000. TransUnion admits that this Court has supplemental jurisdiction over Endless River's remaining claims, but denies that Endless River has stated valid claims and denies that Endless River is entitled to the relief it seeks under those Counts.

13. This Court has personal jurisdiction over TransUnion because TransUnion has established the requisite minimum contacts in Ohio. Among other things, TransUnion has transacted business and engaged in a persistent course of conduct in Ohio by, for example, negotiating, entering into and performing obligations under the Agreement in Ohio, providing services in Ohio, and having business locations in Ohio. TransUnion also has knowingly and intentionally caused tortious injury in Ohio by acts and omissions occurring both in Ohio and outside of Ohio by breaching obligations owed to Endless River under the Agreement,

4

misappropriating Endless River's trade secrets, and otherwise engaging in the tortious and improper conduct set forth in this complaint.

**ANSWER:**    TransUnion admits that this Court may exercise personal jurisdiction over it, but

denies that it has breached any obligations owed to Endless River under the Agreement and denies

that it has engaged in any tortious or improper conduct.

14.    Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Endless River's claims occurred in this district and because TransUnion is subject to personal jurisdiction in this district under Ohio law and therefore "reside" [*sic*] in the Northern District of Ohio according to federal law.

**ANSWER:**    The allegations contained in this paragraph consist of conclusions of law to which

no answer is required.

## Relevant Facts

### A.    Endless River and its Business

15.    Endless River is a small consulting firm that, among other things, provides business development services, technical operations support, and technical project services related to software development of products in the e-commerce space.

**ANSWER:**    TransUnion admits that Endless River is a consulting firm and that, with respect to

the Agreement, Endless River was to provide business development services, technical operations

support and technical project services relating to the Quote Exchange.  TransUnion lacks sufficient

knowledge and information to form a belief as to the truth of the remaining allegations contained

in this paragraph and therefore denies same.

16.    Endless River has extensive experience providing consulting services that include producing, designing and delivering online services related to insurance product distribution.  This experience includes building start-up and growth-stage companies and managing direct-to-consumer offerings from concept through finished product.

**ANSWER:**    TransUnion lacks sufficient knowledge and information to form a belief as to the

truth of the allegations contained in this paragraph and therefore denies same.


17.    Endless River has earned a reputation for engaging in fair, honest and ethical business practices.

**ANSWER:**    Denied.


**B.**    **Quote Exchange and Endless River's Agreement with TransUnion**

18.    Prior to execution of the Agreement, Endless River conceived of the QE Program as a novel approach to solve inefficiencies in the ecommerce market relating to insurance and financial products.

**ANSWER:**    TransUnion admits that Endless River presented the Quote Exchange concept to

TransUnion to develop specifically for the auto insurance market.  TransUnion denies that the QE

Program was developed for any other insurance or financial markets.  TransUnion lacks sufficient

knowledge and information to form a belief as to the truth of the remaining allegations contained

in this paragraph and therefore denies same.


19.    In or around early 2013, Endless River proposed to enter an agreement with TransUnion to develop and commercialize the QE Program as an online marketing program to provide potential customers with comparative quotes for insurance and financial services products, such as auto insurance policies, from a variety of different carriers.

**ANSWER:**    TransUnion admits that Endless River presented the Quote Exchange concept to

TransUnion to develop specifically for the auto insurance market.  TransUnion denies that the QE

Program was developed for any other insurance or financial markets, and denies the remaining

allegations contained in this paragraph.


20.    TransUnion and Endless River executed the Agreement on March 31, 2014.  The Agreement identifies the responsibilities of the parties to develop and commercialize the QE Program and the rights and sets forth obligations of the parties upon termination.

**ANSWER:**    TransUnion admits that the parties executed the Agreement as of March 31, 2014. TransUnion states that the Agreement is the best evidence of the terms and scope of the parties' Agreement, and denies any allegations contained in this paragraph that are inconsistent with the express terms of the Agreement.

21.     The QE Program is the subject of a pending patent application, U.S. Published Application No. US2016/335,726A1 entitled Quote exchange system and method for offering comparative rates for an insurance product (the "Quote Exchange Patent").

**ANSWER:**    TransUnion admits that Endless River submitted a patent application, U.S. Published Application No. US2016/335,726A1 entitled Quote exchange system and method for offering comparative rates for an insurance product.  TransUnion has insufficient information at this time to determine whether the patent application claims are truly embodied by the QE Program, which requires a legal conclusion, and therefore denies the remaining allegations contained in this paragraph.

22.     Endless River is the owner by assignment of all right, title and interest in and to the Quote Exchange Patent, as evidenced by the assignment recorded with the United States Patent and Trademark Office at reel 042542, frame 0756.

**ANSWER:**    The allegations contained in this paragraph constitute a legal conclusion to which no response is required.

23.     Throughout the duration of the Agreement, Endless River performed all of its obligations under the Agreement including acting in a business development capacity to identify potential customers and serving as a technical consultant, product designer, and in a development and IT management role.

**ANSWER:**    TransUnion admits that Endless River performed the minimum requirements as set forth in the Agreement, but denies that the services provided were of the quality that was expected by or promised to TransUnion.

24.     TransUnion provided computer equipment to Endless River for facilitating the performance of its obligations.  Endless River utilized this computer equipment to generate various materials related to the QE Program, the vast majority of which are work product that is confidential and proprietary to Endless River.

**ANSWER:**     TransUnion admits the allegations contained in the first sentence of this paragraph,

and admits that Endless River used the computer equipment in connection with the Agreement.

TransUnion denies the remaining allegations contained in this paragraph.

25.     The Agreement provides that the ownership of the intellectual property rights and application rights to the materials identified in the Agreement as Work Product is contingent on the phased development of the QE Program.

**ANSWER:**     TransUnion states that the Agreement is the best evidence of the terms and scope

of the parties' Agreement, and denies any allegations contained in this paragraph that are

inconsistent with the express terms of the Agreement.

26.     Upon termination of the Agreement before completion of the development of the QE Program, all intellectual property rights and application rights to the QE Program revert to Endless River and all work product deliverables must be distributed to Endless River.

**ANSWER:**     TransUnion states that the Agreement is the best evidence of the terms and scope

of the parties' Agreement, and denies any allegations contained in this paragraph that are

inconsistent with the express terms of the Agreement.

27.     The Agreement includes a confidentiality provision under which TransUnion agreed to not disseminate or otherwise use any of Endless River's confidential information except to the extent necessary for TransUnion's performance under the Agreement.

**ANSWER:**     TransUnion states that the Agreement is the best evidence of the terms and scope

of the parties' Agreement, and denies any allegations contained in this paragraph that are

inconsistent with the express terms of the Agreement.

C.     **TransUnion Terminates the Agreement**

28.     TransUnion sent a termination letter in October 2017 to Endless River providing notice of termination of the Agreement prior to the completion of the phased development and buyout set forth in Exhibit A to the Agreement.  A true and accurate copy of the termination letter is attached as **Exhibit B**.

**ANSWER:**     TransUnion admits that it sent a letter dated October 4, 2017 to Endless River,

notifying Endless River that TransUnion was exercising its right to terminate the Agreement due

to the Quote Exchange not meeting expectations, and further admits that it terminated the

Agreement prior to the completion of all of the phases set forth in the Agreement.  TransUnion

denies any characterization of the October 4, 2017 letter or the Agreement attached as Exhibits A

and B to the Complaint that is inconsistent with those documents.

29.     In addition to terminating the Agreement, TransUnion requested that Endless River agree to modify the terms of the Agreement with respect to, inter alia, ownership of intellectual property and application rights to work product relating to the QE Program.

**ANSWER:**     TransUnion admits that it sent a letter dated October 4, 2017 to Endless River,

notifying Endless River that TransUnion was exercising its right to terminate the Agreement due

to the Quote Exchange not meeting expectations.  TransUnion denies any characterization of the

October 4, 2017 letter or the Agreement attached as Exhibits A and B to the Complaint that is

inconsistent with those documents.

30.     Additionally, TransUnion unilaterally restricted Endless River's access to computer devices that contain Endless River's confidential materials thereon and demanded Endless River return the computer devices.

**ANSWER:**     Denied.

31.     The confidential materials that TransUnion has withheld and failed to return includes, but is not limited to, source code for the QE Program, customer lists, customer targets, communications, pricing information such as pricing formulas, profit margins, product drawings, schematics, specifications, blueprints, processes, product models, product designs, compilations

of business and financial information, emails, design documents, presentations, letters, notes, and other documents relating to the QE Program and Endless River's business plans (collectively, the "Endless River Information").

**ANSWER:** Denied.

32. Endless River is the rightful owner of the Endless River Information.

**ANSWER:** Denied.

33. The Endless River Information includes trade secret information.

**ANSWER:** Denied.

34. The Agreement required TransUnion to continue to pay consulting fees to Endless River through 180 days after notice of termination.

**ANSWER:** TransUnion states that the Agreement is the best evidence of the terms and scope of the parties' Agreement, and denies any allegations contained in this paragraph that are inconsistent with the express terms of the Agreement.

35. Endless River complied with TransUnion's demand for returning the computer devices with the understanding that TransUnion would continue to make payments to Endless River, maintain the Endless River Information thereon in accordance with the terms of the Agreement, and return the Endless River Information as provided in the Agreement.

**ANSWER:** TransUnion admits that Endless River returned certain computer equipment to TransUnion. TransUnion denies that it has breached any terms of the Agreement. TransUnion lacks sufficient knowledge and information to form a belief as to the truth of the remaining allegations contained in this paragraph and therefore denies same.

36. Endless River requested TransUnion return the Endless River Information as provided in the Agreement. Despite this contractual obligation, TransUnion refused to do so without additional consideration. TransUnion continues to hold the Endless River Information hostage in violation of the Agreement.

10

**ANSWER:**   Denied.


**D.**   **TransUnion Interferes with Endless River's Continued Marketing of the QE Program**

37.     After TransUnion's termination of the Agreement, and with TransUnion's knowledge, Endless River continued to market and worked to further commercialize the QE Program on its own.

**ANSWER:**   TransUnion admits that, several months after the Agreement was terminated, it became aware that Endless River was continuing to market the QE Program.


38.     Upon information and belief, one or more representatives of TransUnion falsely represented to ████████████████████████████, on or about October 2017 that TransUnion, and not Endless River, owns and controls the QE Program and that all development of the QE Program has been canceled.

**ANSWER:**   Denied.


39.     Upon information and belief, one or more representatives of TransUnion falsely represented to ████████████████████ in or about March 2017 that TransUnion, and not Endless River, owns and controls the QE Program and that all development of the QE Program has been canceled.

**ANSWER:**   Denied.


40.     Upon information and belief, one or more representatives of TransUnion has falsely represented to other potential clients of Endless River between October 2017 and the date hereof that TransUnion, and not Endless River, owns and controls the QE Program and that all development of the QE Program has been canceled.

**ANSWER:**   Denied.


41.     Upon information and believe [*sic*], ████████████ and other potential Endless River [clients] believed, and were misled, confused, and deceived by, TransUnion's false representations regarding Endless River's ownership of and control over the QE Program and the further development of the QE Program.

**ANSWER:**   Denied.

42.     TransUnion's Statements that it, and not Endless River, owns and controls the QE Program was [*sic*] false and clouded its title to the QE Program because Endless River, not TransUnion, owns and has the legal right to possess and control the Endless River Information.

**ANSWER:**     Denied.

43.     TransUnion's Statements that it, and not Endless River, owns and controls the QE Program further was [*sic*] false and clouded its title to the QE Program because Endless River, not TransUnion, owns the Quote Exchange Patent.

**ANSWER:**     The allegation that Endless River owns the Quote Exchange Patent is a legal conclusion to which no response is required.  TransUnion denies the remaining allegations contained in this paragraph.

44.     TransUnion's statements that all development of the QE Program had been cancelled was false because Endless River has not canceled, and does not intend to cancel, its continued development of the QE Program.

**ANSWER:**     TransUnion lacks sufficient knowledge and information to form a belief as to Endless River's intentions.  TransUnion denies the remaining allegations contained in this paragraph.

45.     Upon information and belief, TransUnion did not disclose to ███████████ or other third parties that Endless River owns and has the legal right to possess and control the Endless River Information, that Endless River owns the Quote Exchange, and that Endless River has not canceled its continued development of the QE Program.

**ANSWER:**     TransUnion denies that "Endless River owns and has the legal right to possess and control the Endless River Information, that Endless River owns the Quote Exchange," and admits that it therefore did not inform ██████, ██ or any other party of same.  Responding further, TransUnion states that it communicated to ██████ and ██ that TransUnion was no longer supporting Quote Exchange, and denies that it engaged in any discussion of ownership of the platform.

12

46. Endless River traveled to various portions of the United States including to cities in Texas and Nevada to meet with potential clients to pursue business relationships and to market the QE Program, and potential clients expressed a sincere interest in the QE Program and an interest in a partnership with Endless River.

**ANSWER:** TransUnion lacks sufficient knowledge and information to form a belief as to the truth of the allegations contained in this paragraph and therefore denies same.

47. Both ████████ and ████ ultimately declined to pursue a business relationship with Endless River.

**ANSWER:** TransUnion lacks sufficient knowledge and information to form a belief as to the truth of the allegations contained in this paragraph and therefore denies same.

48. Upon information and belief, ████████ and ██████ decision to not pursue a business relationship with Endless River was due, at least in part, to TransUnion's false and defamatory statements and misrepresentations regarding the continued development of the QE Program and ownership of the QE Program.

**ANSWER:** Denied.

49. Consistent with the Agreement, Endless River requested that TransUnion execute an assignment document evidencing Endless River's rights in and to the QE Program. A true and accurate copy of which is attached as **Exhibit C.**

**ANSWER:** TransUnion admits that it received the document attached as Exhibit C to the Complaint, but denies that it is consistent with the Agreement, and denies the remaining allegations contained in this paragraph.

50. TransUnion refused to execute the assignment document and wrongfully maintains that it is the owner of the QE Program notwithstanding Endless River's ownership rights under the Agreement.

**ANSWER:** TransUnion admits that it did not execute the document attached as Exhibit C to the Complaint, but denies the remaining allegations contained in this paragraph.

13

51.     TransUnion continues to refuse to execute the assignment document in violation of the Agreement unless Endless River provide to it additional monetary consideration.

**ANSWER:**     TransUnion admits that it has not executed the document attached as Exhibit C to the Complaint, but denies the remaining allegations contained in this paragraph.

52.     TransUnion remains in possession, custody and control of the Endless River Information and other work product related to the QE Program without Endless River's permission or consent and in violation of the Agreement.

**ANSWER:**     Denied.

53.     TransUnion has also failed to turn over the Endless River Information and other work product deliverables that remain under TransUnion's possession, custody and control as required by the Agreement.

**ANSWER:**     Denied.

54.     TransUnion continues to use Endless River's trade secrets by holding the Endless River Information hostage in an attempt to demand further consideration from Endless River in violation of the Agreement by preventing Endless River from further developing and commercializing the QE Program.

**ANSWER:**     Denied.

55.     Upon information and belief, TransUnion views Endless River's trade secrets as something it can handle as it wishes, without regard to Endless River's interests, and TransUnion has used, and continues to use, Endless River's trade secrets to develop and commercialize software, products and services to gain commercial advantages.

**ANSWER:**     Denied.

56.     TransUnion further has used Endless River's trade secrets to TransUnion's commercial advantage and Endless River's commercial disadvantage by depriving Endless River of its ability to register its copyrights in and to the source code for the QE Program.

**ANSWER:**     Denied.

14

57. TransUnion's unauthorized statements to ███████ and ███ regarding the QE Program and its failure to turn over the Endless River Information constitutes willful and material breaches of the Agreement, misappropriation of Endless River's trade secret rights, conversion, defamation, slander of title, tortious interference with business expectancy, and violations of the Ohio Deceptive Trade Practices Act.

**ANSWER:** Denied.

58. Accordingly, Endless River seeks injunctive relief to compel TransUnion to immediately discontinue any and all further breaches of the Agreement, misappropriations of Endless River's trade secrets, and violations of Endless River's other rights under controlling law.

**ANSWER:** TransUnion admits that Endless River seeks injunctive relief, but denies that it is

entitled to the relief it seeks and denies the remaining allegations contained in this paragraph.

59. By refusing to turn over and maintaining possession and control of the Endless River Information and by claiming to own the QE Program to prospective business partners without Endless River's consent, TransUnion has, at a minimum, breached: its obligations of confidentiality, to return all tangible information upon the termination of the Agreement, and to execute and deliver instruments of conveyance as requested by Endless River and as expressly required by the Agreement.

**ANSWER:** Denied.

60. As a result of TransUnion's multiple contractual breaches and its misappropriation of Endless River's trade secrets, TransUnion has caused Endless River substantial damage and irreparable harm that is likely to, and inevitably will, continue unless and until it is enjoined from further possessing or using Endless River's confidential, proprietary, and trade secret information relating to the QE Program in violation of the Agreement and be compelled to specifically perform all of its obligations thereunder.

**ANSWER:** Denied.

## Count One
*Breach of Contract*

61. Endless River incorporates by reference all allegations in all preceding and successive paragraphs of this complaint as if fully rewritten herein.

**ANSWER:**  TransUnion restates and realleges its answers to all preceding and successive paragraphs of the Amended Complaint as and for its answer to this paragraph.

62.  The Agreement constitutes a valid and enforceable written contract between Endless River and TransUnion and Endless River has performed all of its obligations to TransUnion under that agreement.

**ANSWER:**  The allegation that the Agreement constitutes a valid and enforceable written contract between Endless River and TransUnion is a legal conclusion to which no response is required.  TransUnion admits that Endless River performed the minimum requirements as set forth in the Agreement, but denies that the services provided were of the quality that was expected by or promised to TransUnion.

63.  TransUnion has and continues to breach the Agreement by, among other acts and omissions, possessing and controlling the Endless River Information without Endless River's permission or consent and by failing to promptly return all Endless River Information to Endless River.

**ANSWER:**  Denied.

64.  Endless River has been damaged by TransUnion's breaches to the Agreement.

**ANSWER:**  Denied.

65.  Unless enjoined and compelled to specifically perform its obligations under the Agreement, TransUnion's ongoing breaches of the Agreement threaten Endless River with irreparable harm for which it has no adequate remedy at law.

**ANSWER:**  Denied.

66.  As a direct and proximate result of TransUnion's breaches of the Agreement, Endless River has suffered, and continues to suffer loss of its valuable rights and intellectual property assets, including loss of customers and other damages, in an amount to be determined but reasonably believed to exceed $75,000.

**ANSWER:**  Denied.

16

## Count Two

*Trade Secret Misappropriation*
*(Defend Trade Secrets Act 18 U.S.C. § 1836 et seq.)*

67.     Endless River incorporates by reference all allegations in all preceding and successive paragraphs of this complaint as if fully rewritten herein.

**ANSWER:**     TransUnion restates and realleges its answers to all preceding and successive paragraphs of the Amended Complaint as and for its answer to this paragraph.

68.     The Endless River Information constitutes trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq.

**ANSWER:**     The allegations contained in this paragraph constitute a legal conclusion to which no response is required.

69.     The Endless River Information is related to a product or service used in, or intended for use in, interstate or foreign commerce.

**ANSWER:**     TransUnion admits that some of the Endless River Information relates to a product or service used in, or intended for use in, interstate or foreign commerce.

70.     The Endless River Information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

**ANSWER:**     Denied.

71.     Endless River has taken reasonable measures to keep the Endless River Information secret including advising its agents of the existence of a trade secret, limiting access to the Endless River Information on a "need to know basis" and the confidentiality clause in the Agreement.

**ANSWER:**     TransUnion lacks sufficient knowledge and information to form a belief as to truth of the allegations contained in this paragraph and therefore denies same.

17

72.    TransUnion has used the Endless River Information without Endless River's express or implied consent. Such use includes, but is not limited to, refusing to return the Endless River Information to Endless River to prevent Endless River from developing and commercializing the QE Program.

**ANSWER:**    Denied.

73.    Upon information and belief, TransUnion views Endless River's trade secrets as something it can handle as it wishes, without regard to Endless River's interests, and has used, and continues to use, Endless River's trade secrets to develop and commercialize software, products, and services to gain commercial advantages.

**ANSWER:**    Denied.

74.    TransUnion further has used Endless River's trade secrets to TransUnion's commercial advantage and Endless River's commercial disadvantage by depriving Endless River of its ability to register its copyrights in and to the source code for the QE Program.

**ANSWER:**    Denied.

75.    TransUnion, therefore, has misappropriated Endless River's trade secrets by, among other acts and omissions, using Endless River's trade secrets without express or implied consent by a person who at the time of disclosure or use, knew or had reason to know that knowledge of the trade secret was acquired under circumstances giving rise to a duty to limit the use of the trade secret.

**ANSWER:**    Denied.

76.    Unless restrained and enjoined from engaging in the foregoing and compelled to specifically perform its obligations under the Agreement, it is inevitable that TransUnion will continue using Endless River's confidential, proprietary and trade secret information and that Endless River will suffer loss of valuable intellectual property assets and the loss of customers and other damages.

**ANSWER:**    Denied.

77.    Unless enjoined and compelled to specifically perform its obligations under the Agreement, TransUnion's ongoing use of Endless River's trade secrets threatens Endless River with irreparable harm for which it has no adequate remedy at law by depriving Endless River of control over and exclusive use of the valuable intellectual property assets comprising Endless River's trade secret information.

18

**ANSWER:**    Denied.


78.    As a direct and proximate result of TransUnion's misappropriation, Endless River has suffered, and will continue to suffer, loss of its valuable intellectual property assets and loss of customers and other damages in an amount to be determined but reasonably believed to exceed $75,000.

**ANSWER:**    Denied.


## Count Three
### *Conversion*

79.    Endless River incorporates by reference all allegations in all preceding and successive paragraphs of this complaint as if fully rewritten herein.

**ANSWER:**    TransUnion restates and realleges its answers to all preceding and successive

paragraphs of the Amended Complaint as and for its answer to this paragraph.


80.    Endless River has the right to possess the Endless River Information, including all tangible and intangible embodiments thereof, irrespective of whether the Endless River Information qualifies as a trade secret and independent of any use or disclosure of such information by TransUnion.

**ANSWER:**    Denied.


81.    TransUnion has restricted Endless River's access to, and deprived Endless River of possession of, the Endless River Information, including both tangible and intangible embodiments thereof.

**ANSWER:**    Denied.


82.    TransUnion wrongly assumed unauthorized control or dominion over the Endless River Information by restricting Endless River's access to computer devices that contain the Endless River Information, by demanding the return of those computer devices pursuant to the Agreement, and by otherwise failing to return tangible and intangible embodiments of the Endless River Information to Endless River.

**ANSWER:**    Denied.

83.     Endless River has a right to immediate possession of the Endless River Information, absolutely and unconditionally And [*sic*] irrespective of whether the Endless River Information qualifies as a trade secret.

**ANSWER:**     Denied.


84.     Endless River demanded TransUnion return possession of  the  Endless River Information.

**ANSWER:**     TransUnion admits that Endless River has demanded that TransUnion turn over

certain items to Endless River, but denies that Endless River is entitled to said items and otherwise

denies the remaining allegations contained in this paragraph.


85.     By and through their conduct averred herein, TransUnion has intentionally and wrongfully exercised dominion or control over the Endless River Information and thereby interfered with Endless River's right to access and control it.

**ANSWER:**     Denied.


86.     Endless River remains unable to access the Endless River Information, including to even file for copyright protection for the source code to the QE Program with the United States Copyright Office, because it remains under the wrongful possession and control of TransUnion.

**ANSWER:**     Denied.


87.     TransUnion has no license to and no ownership rights in the Endless River Information.

**ANSWER:**     Denied.


88.     As such, TransUnion has converted the Endless River Information in violation of both Ohio and Illinois law.

**ANSWER:**     Denied.


89.     As a direct and proximate result of TransUnion's conversion, Endless River has suffered, and will continue to suffer, loss of its valuable intellectual property assets and loss of

customers and other damages in an amount to be determined but reasonably believed to exceed $75,000.

**ANSWER:**     Denied.

### Count Four
*Defamation*

90.     Endless River incorporates by reference all allegations in all preceding and successive paragraphs of this complaint as if fully rewritten herein.

**ANSWER:**     TransUnion restates and realleges its answers to all preceding and successive paragraphs of the Amended Complaint as and for its answer to this paragraph.

91.     Upon information and belief, TransUnion intentionally made false statements about Endless River as alleged herein.

**ANSWER:**     Denied.

92.     When TransUnion made its false statements, it knew or should have known that such statements were false.

**ANSWER:**     Denied.

93.     TransUnion made an unprivileged publication of false statements to multiple third parties.

**ANSWER:**     Denied.

94.     A reasonable person would have considered TransUnion's false statements to be defamatory. Upon information and belief, third parties have considered TransUnion's false statements to be defamatory.

**ANSWER:**     Denied.

95.     TransUnion published its false statements to third parties in the context of trying to dissuade the parties to whom they were published from doing business with Endless River by calling into question Endless River's right to engage in its proposed business dealings.

**ANSWER:**     Denied.


96.     TransUnion's false statements were intended to injure, and in fact have injured, Endless River in its trade, profession, and occupation because they have caused third parties to not engage in or continue to do business with Endless River.

**ANSWER:**     Denied.


97.     Moreover, TransUnion's false statements have damaged Endless River's reputation for engaging in fair, honest, and ethical business practices.

**ANSWER:**     Denied.


98.     TransUnion's false statements that it, and not Endless River, owns and controls the QE Program is not susceptible to any innocent meaning because TransUnion does not own or legally have the right to control the QE Program.

**ANSWER:**     Denied.


99.     TransUnion's false statements that all development of the QE Program had been cancelled is not susceptible to any innocent meaning because Endless River has not cancelled its continued development of the QE Program.

**ANSWER:**     Denied.


100.     TransUnion acted maliciously because it knew its statements regarding ownership of the QE Program and cancellation of its development and commercialization were false or acted with reckless disregard of their falsity.

**ANSWER:**     Denied.


101.     Endless River has suffered special damages because TransUnion's false and defamatory statements caused one or more potential clients or partners to decline to enter into or otherwise continue a further business relationship with Endless River.

**ANSWER:**     Denied.

102.    The special damages that Endless River has suffered as a result of TransUnion's false and defamatory statements are independent, and do not arise out of either party's performance, of the Agreement.

**ANSWER:**    Denied.


103.    As a direct and proximate result of TransUnion's defamation, Endless River has suffered, and will continue to suffer, loss of its valuable intellectual property assets and loss of customers and other damages in an amount to be determined but reasonably believed to exceed $75,000.

**ANSWER:**    Denied.


### Count Five
*Slander of Title*

104.    Endless River incorporates by reference all allegations in all preceding and successive paragraphs of this complaint as if fully rewritten herein.

**ANSWER:**    TransUnion restates and realleges its answers to all preceding and successive paragraphs of the Amended Complaint as and for its answer to this paragraph.


105.    TransUnion published slanderous statements disparaging Endless River's title to the Endless River Information and the Quote Exchange Patent.

**ANSWER:**    Denied.


106.    TransUnion published slanderous statements disparaging Endless River's title to the Endless River Information and the Quote Exchange Patent.

**ANSWER:**    Denied.


107.    TransUnion knew or should have known that its slanderous statements disparaging Endless River's title to the Endless River Information and the Quote Exchange Patent were false such that TransUnion published its statements with malice or with reckless disregard for their falsity.

**ANSWER:**    Denied.

108.    Endless River has suffered special damages because TransUnion's slanderous statements disparaging Endless River's title to the Endless River Information and the Quote Exchange Patent caused one or more potential clients or partners to decline to enter into or otherwise continue a further business relationship with Endless River.

**ANSWER:**    Denied.

109.    The special damages that Endless River has suffered as a result of TransUnion's slanderous statements are independent, and do not arise out of either party's performance, of the Agreement.

**ANSWER:**    Denied.

110.    As a direct and proximate result of TransUnion's slanderous statements, Endless River has suffered, and will continue to suffer, loss of its valuable intellectual property assets and loss of customers and other damages in an amount to be determined but reasonably believed to exceed $75,000.

**ANSWER:**    Denied.

### Count Six
*Tortious Interference with Business Expectancy*

111.    Endless River incorporates by reference all allegations in all preceding paragraphs of this complaint as if fully rewritten herein.

**ANSWER:**    TransUnion restates and realleges its answers to all preceding and successive paragraphs of the Amended Complaint as and for its answer to this paragraph.

112.    Endless River had a reasonable expectation of entering into a valid business relationship with potential clients or partners, including but not limited to ████████ and ██, with respect to the QE Program

**ANSWER:**    TransUnion is without sufficient knowledge and information to form a belief as to the truth of the allegation regarding the substance of Endless River's expectations, and denies the remaining allegations contained in this paragraph.

113.    TransUnion had knowledge of Endless River's business expectations related to the QE Program because Endless River informed TransUnion that it intended to continue marketing and commercializing the QE Program.

**ANSWER:**    TransUnion admits that representatives of Endless River expressed to representatives of TransUnion a desire to continue to market the QE Program, but denies that TransUnion "had knowledge of Endless River's business expectations related to the QE Program."

114.    TransUnion intentionally, materially, unjustifiably and without privilege interfered with Endless River's business expectations by engaging in the wrongful conduct alleged herein, including by breaching its contract with Endless River.

**ANSWER:**    Denied.

115.    Among its other acts and omissions, TransUnion intentionally, materially, unjustifiably and without privilege interfered with Endless River's business expectations by misappropriating Endless River's trade secrets.

**ANSWER:**    Denied.

116.    Among its other acts and omissions, TransUnion also intentionally, materially, unjustifiably and without privilege interfered with Endless River's business expectations by converting Endless River's property.

**ANSWER:**    Denied.

117.    Among its other acts and omissions, TransUnion also intentionally, materially, unjustifiably and without privilege interfered with Endless River's business expectations by making false and defamatory statements to Endless River's potential clients or partners.

**ANSWER:**    Denied.

118.    Among its other acts and omissions, TransUnion also intentionally, materially, unjustifiably and without privilege interfered with Endless River's business expectations by making slanderous statements disparaging Endless River's title to the Endless River information and the Quote Exchange Patent to Endless River's potential clients or partners.

**ANSWER:**    Denied.

119.    TransUnion's tortious interference prevented the realization of Endless River's business expectancy with potential clients and partners, including but not limited to ████ and ██.

**ANSWER:**    Denied.

120.    As a direct and proximate result of TransUnion's tortious interference, Endless River has suffered, and will continue to suffer, loss of its valuable intellectual property assets and loss of customers and other damages in an amount to be determined but reasonably believed to exceed $75,000.

**ANSWER:**    Denied.

## Count Seven
*Violations of Ohio Deceptive Trade Practices Act*
*(ODTPA - O.R.C. 4165/ et seq.)*

121.    Endless River incorporates by reference all allegations in all preceding and successive paragraphs of this complaint as if fully rewritten herein.

**ANSWER:**    TransUnion restates and realleges its answers to all preceding and successive

paragraphs of the Amended Complaint as and for its answer to this paragraph.

122.    TransUnion's misrepresentations and its concealment, suppression and omission of material facts identified and described herein occurred at least partly in Ohio and violate the Ohio Deceptive Trade Practices Act, O.R.C. 4165, *et seq*.

**ANSWER:**    Denied.

123.    Such misrepresentations, concealments, suppressions and omissions are material to potential clients or partners of Endless River as they would have acted differently if the actual status of the QE Program was known when approached by Endless River to engage in a business relationship.  This includes the material information that Endless River is the rightful owner of the QE Program and that Endless River intends to continue development and commercialization of the QE Program.

**ANSWER:**    Denied.

124. TransUnion's misrepresentations, concealments, suppressions and omissions were completed in the course of its business have caused a likelihood of confusion or a misunderstanding as to the source, sponsorship, approval, certification, affiliation, connection, or association of the QE Program and Endless River.

**ANSWER:** Denied.

125. TransUnion willfully made such misrepresentations, concealments, suppressions, and omissions relating to Endless River and the QE Program, knowing it to be deceptive, to induce Endless River's potential customers' reliance, including but not limited to ███████ and ███

**ANSWER:** Denied.

126. TransUnion's misrepresentations, concealments, suppressions and omissions regarding Endless River and the QE Program amount to false or misleading representations of fact that are material to Endless River's business.

**ANSWER:** Denied.

127. As a direct and proximate result of TransUnion's violations of the Ohio Uniform Deceptive Trade Practices Act, Endless River has suffered, and will continue to suffer, loss of its valuable intellectual property assets and loss of customers and other damages in an amount to be determined but reasonably believed to exceed $75,000.

**ANSWER:** Denied.

## AFFIRMATIVE DEFENSES

As and for a further answer to Plaintiff's First Amended Complaint, TransUnion, LLC alleges the following affirmative defenses.

### FIRST AFFIRMATIVE DEFENSE

Endless River's claims for damages and other relief are barred, in whole or in part, by the express terms of the Agreement, including without limitation the Waiver of Liability contained in Section 8.2 of the Agreement attached as Exhibit A to the Complaint.

### SECOND AFFIRMATIVE DEFENSE

Endless River's claims for damages and other relief are barred, in whole or in part, by Endless River's failure to mitigate or minimize its alleged damages.

### THIRD AFFIRMATIVE DEFENSE

Endless River's claims for damages and other relief are barred, in whole or in part, by the economic loss doctrine.

### FOURTH AFFIRMATIVE DEFENSE

Endless River's Amended Complaint fails to state a claim upon which relief may be granted.

### FIFTH AFFIRMATIVE DEFENSE

Endless River's claims for damages and other relief are barred, in whole or in part, because any damages Endless River allegedly sustained were caused by an intervening cause other than the conduct of TransUnion.

### SIXTH AFFIRMATIVE DEFENSE

Endless River's claims for damages and other relief are barred, in whole or in part, because any damages Endless River allegedly sustained were caused by a superseding cause other than the conduct of TransUnion.

## SEVENTH AFFIRMATIVE DEFENSE

Endless River's claims for damages and other relief are barred, in whole or in part, by the equitable doctrine of unclean hands.

## EIGHTH AFFIRMATIVE DEFENSE

Endless River's claims for damages and other relief are barred, in whole or in part, by the equitable doctrine of estoppel.

## NINTH AFFIRMATIVE DEFENSE

Endless River's claims for damages and other relief are barred, in whole or in part, by virtue of the fact that any statements allegedly made by any representative of TransUnion were true.

## TENTH AFFIRMATIVE DEFENSE

Endless River's claims for damages and other relief are barred, in whole or in part, by virtue of the fact that any statements allegedly made by any representative of TransUnion were privileged at the time they were made.

## ELEVENTH AFFIRMATIVE DEFENSE

Endless River's claims for damages and other relief are barred, in whole or in part, because Endless River did not sustain special damages as a result of any statement allegedly made by any representative of TransUnion.

## TWELFTH AFFIRMATIVE DEFENSE

Endless River's trade secrets claims are barred based on the doctrine of independent development.

### THIRTEENTH AFFIRMATIVE DEFENSE

Endless River's trade secrets claims are barred because the alleged trade secrets were and are in the public domain.

### FOURTEENTH AFFIRMATIVE DEFENSE

Endless River's trade secrets claims are barred because Endless River did not take proper efforts to maintain the secrecy of the alleged trade secrets.

### FIFTEENTH AFFIRMATIVE DEFENSE

For the reasons set forth in TransUnion's Opposition to Endless River's motion for leave to further amend its Complaint (*see* ECF Nos. 108, 109), which are incorporated herein, Endless River's claim for violation of the Ohio Deceptive Trade Practices Act is untimely and should be dismissed.

### COUNTERCLAIM

TransUnion, LLC incorporates as if fully set forth herein the allegations and claims contained in its Counterclaim against Endless River Technologies, LLC.  *See* ECF No. 43.

**WHEREFORE**, Defendant, TransUnion, LLC, respectfully requests that this Court dismiss the Complaint against it with prejudice and without leave to amend or re-plead, that the Court find and declare that TransUnion has no liability to Endless River Technologies, LLC; that the Court award TransUnion its costs, expenses and attorneys' fees incurred herein; and for such further legal and equitable relief which the Court deems just and proper.

Dated:    September 1, 2021

/s/Courtenay Y. Jalics
Courtenay Y. Jalics (0077507)
Chelsea C. Smith (0091011)
TUCKER ELLIS LLP
950 Main Avenue
Suite 1100
Cleveland, OH 44113
Telephone:      216.592.5000
Facsimile:      216.592.5009
Email:
courtenay.jalics@tuckerellis.com
chelsea.smith@tuckerellis.com


Tonya G. Newman
(Ill. ARDC No. 6286958)
*Admitted Pro Hac Vice*
Olivia Luk Bedi
(Ill. ARDC No. 6288365)
*Admitted Pro Hac Vice*
NEAL, GERBER & EISENBERG LLP
Two N. LaSalle Street, Suite 1700
Chicago, Illinois  60602-3801
Tel:   (312) 269-8000
Fax:  (312) 269-1747
Email:    tnewman@nge.com
              obedi@nge.com

*Attorneys for Defendant*
*TransUnion LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2021, a copy of the foregoing *Defendant TransUnion, LLC's Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint* was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*/s/ Courtenay Y. Jalics*
Attorney for Defendant TransUnion LLC

5274473.1