IN THE UNITED STATES DISTRICT COURT·
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| ENDLESS RIVER TECHNOLOGIES LLC, | ) | CASE NO.:  1:18 CV 936 |
|  | ) |  |
| Plaintiff/Counter-Defendant, | ) |  |
|  | ) |  |
| v. | ) | JUDGE DONALD C. NUGENT |
|  | ) |  |
| TRANS UNION LLC, | ) |  |
|  | ) | MEMORANDUM OPINION |
|  | ) | AND ORDER |
| Defendant/Counter-Plaintiff. | ) |  |

This case is currently before the Court on Defendant, TransUnion LLC's ("TransUnion")
Motion for Judgment as a Matter of Law.  (ECF # 276).  Endless River Technologies LLC
("Endless River") filed a Brief in Opposition to the motion (ECF # 276), and TransUnion filed a
Reply Brief in support of its motion.  (ECF #285).    The matter is now fully briefed and ready for
disposition.  Having reviewed the briefs and fully analyzed the contracts and applicable law, the
Court finds that TransUnion's Motion for Judgment as a Matter of Law should be GRANTED.

Plaintiff's Second Amended Complaint alleged seven causes of action: (1) Breach of
Contract; (2) Trade Secret Misappropriation; (3) Conversion; (4) Defamation; (5) Slander of
Title; (6) Tortious Interference with Business Expectancy; and, (7) Violations of the Ohio
Deceptive Trade Practices Act.   The Defendant asserted counterclaims for Breach of Contract
and Declaratory Judgment.  Plaintiff's claim for conversion, and Defendant's claim for
Declaratory Judgment were dismissed on summary judgment. (ECF #170).  Also during
summary judgment, the Court found that the contract plainly and unambiguously provided that
ownership of the QE Code reverted to Endless River ownership when TransUnion terminated the

contract at the end of 2018. (ECF #170, PageID # 9764-65). Although Endless River did not seek summary judgment on its breach of contract claim, the parties subsequently agreed that this finding established that TransUnion's failure to timely return the Code to Endless River was a breach of the contract.

On the first day of trial, prior to voir dire, the Defendants voluntarily dismissed their counterclaim. (ECF #261, PageID #12744). On the third day, Plaintiff voluntarily dismissed its claim for Tortious Interference with Business Expectancy. (ECF #271). Following the Plaintiff's presentation of evidence, the Court granted Defendant's Rule 50 motion for judgment as a matter of law on Count Four (Defamation), and reserved ruling as to the other remaining counts. (ECF #272). At the close of evidence, the Court found in favor of Endless River on Count One (Breach of Contract), and dismissed Counts 2 (Trade Secret Misappropriation), 5 (Slander of Title), and 7 (Violations of the Ohio Deceptive Trade Practices Act). (ECF #268, PageID 14202-03; ECF #273). The jury was instructed to determine whether damages had been proven on the breach of contract claim, and if so, in what amount. (ECF #274).

On September 16, 2022, the twelve member Jury returned a unanimous finding that Plaintiff, Endless River proved, by a preponderance of the evidence that it suffered damages in the amount of $18.3 million, proximately caused by TransUnion's failure to timely return the Quote Exchange code in accordance with the contract terms. (ECF #274). The Court accepted the Jury's findings and entered Judgment in favor of Plaintiffs and against the Defendant TransUnion in that amount. (ECF #273, 275). Defendant now moves for judgment as a matter of law, arguing that the jury's damages award is prohibited by the terms of the contract, and otherwise precluded as a matter of law.

-2-

## **STANDARD OF REVIEW**

Fed. R. Civ. P. 50 provides in relevant part that :

> If a party has been fully heard on an issue during a jury trial and the
>
> court finds that a reasonable jury would not have a legally
>
> sufficient evidentiary basis to find for the party on that issue, the
>
> court may:
>
>> (A) resolve the issue against the party; and
>>
>> (B) grant a motion for judgment as a matter of law against
> the party on a claim or defense . . .

Fed.R.Civ.P. 50(b) provides that if a court does not grant a motion for judgment as a matter of law made after the close of all the evidence and the party renews its request after a verdict is returned, the court may (1) allow the judgment to stand, (2) order a new trial, or (3) direct entry of judgment as a matter of law.  The "standard for granting a renewed motion for judgment as a matter of law under Rule 50(b) is precisely the same as the standard for granting the pre-submission motion." Wright & Miller, *Federal Practice and Procedure*: Civil 2d § 2537, p. 347 (footnote omitted).

That is, judgment as a matter of law may be granted when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 543 (6th Cir. 2008)(citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000); see also Fed. Civ. R.50(b).  "The Court is not free to weigh the parties' evidence or to pass upon the credibility of witnesses.  Nor may the Court substitute its own judgment for that of the jury.... When the

-3-

evidence would permit reasonable minds to differ on the issues decided, a motion for judgment as a matter of law must be denied. In short, every effort must be made to uphold the verdict if reasonably possible." *In re Scrap Metal Antitrust Litigation*, No. 1:02 CV 0844, 2006 WL 2850453, at *8 (N.D. Ohio Sept. 30, 2006).

## FACTS

In 2014, the parties entered into a Development Agreement and Contract for Services ("the Agreement") outlining their rights and obligations in the joint development and commercialization of a method for providing insurers on-line, real-time comparison price quotes to consumers ("Quote Exchange"). The parties agree that the Agreement provided that "[i]n the event the Quote Exchange [did] not meet expectations at any time in Trans Union's sole discretion," Trans Union could "terminate the contract upon 180 days prior written notice." (ECF #1, Ex. A). TransUnion exercised this right on October 4, 2017. The contract further provided that should TransUnion choose to terminate the Contract, "the Quote Exchange platform source code developed hereunder will revert to ERT [Endless River] ownership." Following termination, TransUnion failed to recognize Endless River's ownership rights, thereby breaching the Contract.

TransUnion is not disputing the determination that it breached the contract. Rather, it raises six separate challenges to the validity of the damages sought by the Plaintiff and awarded by the jury. First, TransUnion claims that the verdict awards damages that are specifically barred under Section 8.2 of the Contract. Second, it claims that the damages violate Illinois' "New Business Rule," which precludes lost profit damages for start-up businesses. TransUnion also

-4-

claims that the amount awarded include improper amounts for potential profits that predate the breach; violate Illinois' prejudgment interest limits; ignore mitigation evidence; and are unsupported by the evidence presented at trial.

## ANALYSIS

A. Damages Waiver

In a breach of contract action, "the law of damages seeks to place the aggrieved party in the same economic position the aggrieved party would have attained if the contract had been performed." 11 Corbin on Contracts §55.11 (2022)(citing Restatement (First) of Contracts § 329); see also Restatement (Second) of Contracts §347 ("Contract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed."). There are two broad categories of contract damages: (1) direct, or general damages and (2) consequential, or special damages. 24 Williston on Contracts §64:16 (4th ed.).

Although consequential damages can generally be awarded in a breach of contract action, the parties may contractually limit liability for these types of damages. Illinois law, which governs the Agreement in this case, recognizes the "strong public policy favoring freedom of contract," and permits enforcement of damage limiting clauses. *See, Westlake Fin. Grp., Inc. V. CDH-Delnor Health Sys.*, 25 N.E. 3d 1166, 1174 (Ill. App. Ct. 2015). However, Illinois also holds that damages waivers should be strictly construed against the benefitting party. *Aculocity, LLC v. Force Marketing Holdings, LLC*, NO. 17-CV-2868, 2019 WL 764040, at *2 (N.D. Ill.

Feb. 21, 2019). Section 8.2 of the Contract between the parties contains this type of limiting clause in the form of a waiver of liability barring recovery of any consequential or indirect damages, including lost profits or revenue:

> IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR, AND BOTH [TRANSUNION] AND [ENDLESS RIVER] HEREBY WAIVE AS TO THE OTHER PARTY, ANY CONSEQUENTIAL, INCIDENTAL, INDIRECT, SPECIAL OR PUNITIVE DAMAGES INCURRED BY THE OTHER PARTY AND ARISING OUT OF THE PERFORMANCE OF THIS CONTRACT, INCLUDING BUT NOT LIMITED TO LOSS OF GOOD WILL AND LOST PROFITS OR REVENUE, WHETHER OR NOT SUCH LOSS OF DAMAGES IS BASED IN CONTRACT, WARRANTY, TORT, NEGLIGENCE, STRICT LIABILITY, INDEMNITY, OR OTHERWISE EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THESE LIMITATIONS SHALL APPLY NOT WITHSTANDING ANY FAILURE OF ESSENTIAL PURPOSE OR ANY LIMITED REMEDY.

(ECF #1-1, Development Agreement §8.2). The parties recognize that Illinois courts have read similar language to mean that the waiver precludes recovery of lost profits or revenue only when they constitute consequential damages, and not when they can be considered direct damages.

Endless River presented a damages theory based on the Venture Capital Approach ("VC Approach") which seeks to define a start-up company's projected value, in the absence of any breach, through the capture of lost market opportunities. Both parties agree that this calculation is, in essence, a calculation of lost profits. (ECF #283, PageID14552 ; ECF # 276-1 PageID14348, 14367-68). They disagree on whether these damages are direct or consequential. The question the Court must, therefore, answer is whether the Plaintiff's evidence of damages proves direct damages, which are recoverable, or consequential damages which are barred under the Contract.

Direct damages are "[d]amages that the law presumes follow the type of wrong

-6-

complained of." *Id.* (citing Black's Law Dictionary 394 (7th ed. 1999). In contract cases, they are

those "arising naturally and usually from the breach." or "loss of bargain" damages stemming

from the failure of the promised performance itself. 11 Corbin on Contracts § 55.6 (2022).

Illinois further defines direct contractual damages as "utterly foreseeable, indeed certain to stem

from a breach of the contract." *See Tate & Lyle Americas LLC v. Glatt Air Technologies, Inc.*,

2016 WL 7422289, at \*4 (C.D. Ill. 2016). Generally they are considered to be damages that flow

from the subject matter of the contract. *See, e.g., DaimlerChrysler Motors Co., LLC v. Manuel*,

362 S.W.3d 160, 180-81, 183-84 (Tex. App. – Fort Worth 2012).

Consequential damages, on the other hand, "are losses or injuries that do not flow directly

and immediately from a party's wrongful act but rather result indirectly from the act." *Aculocity,*

*LLC v. Force Mktg. Holdings, LLC*, No. 17-CV-2868, 2019 U.S. Dist. LEXIS 27409, at \*5 (N.D.

Ill. 2019). They are "recoverable only if, at the time of [the contract's]formation, the defendant

has reason to know of facts indicating that particular or unusual damages will or may result from

the defendant's breach." 11 Corbin on Contracts § 55.6 (2022). Consequential damages must

still be proximately caused by the breach and must be foreseeable, but they are not the invariable

result of a breach. *Id.* The difference between direct and consequential damages in breach of

contract claims lies "in the degree to which the damages are a foreseeable ... highly probable[]

consequence of a breach." *Rexnord Corp. v. DeWolff Boberg & Assocs., Inc.*, 286 F.3d 1001,

1004 (7th Cir. 2002). Consequential damages require proof of an additional "link in the causal

chain" in order to connect the damages to the contract. *Powell Elec. Sys., Inc. v. Hewlett*

*Packard Co.*, 356 S.W.3d 113 (Tex. App. 2011).

Plaintiff relies in large part on the decision in *Midland Hotel Corp. V. Reuben H.*

-7-

*Donnelley Corp.*,515 N.E.2d 61 (Ill. 1987), to argue that the lost profits in this case are direct and not consequential damages. In that case, the Midland Hotel entered into a contract with Reuben H. Donnelley Corp. ("RHD") to include Midland in the first issue of a new phone directory RHD was publishing. Midland agreed to distribute the directory in its hotel, in return for an advertisement on the outside back-cover and a listing in the appropriate section of the directory. When the directory was published, Midland's listing was not placed in the hotel section, but rather in the "banquet rooms" section of the directory. Midland argued that it lost $1.3 million in business because it was not included in the hotel section of the directory. The Illinois Supreme Court held that the lost profits sought by Midland were direct damages because they were a direct and natural consequence of RHD's breach. Specifically, the court found that "the very purpose of a Yellow Pages listing is to increase profits," and "the plaintiff's profits formed the very basis of its contract with the defendant." *Id. at 67.*

Endless River argues that the Development Agreement anticipated the continuation of profits following a potential TransUnion termination. They cite Phase III of the Agreement which provides that, "should TU choose to terminate the contract and should ERT continue to market and monetize the TU developed code, repayment of the TU incurred development fees shall be paid to TU from future ERT revenues generated over a period of time not to exceed 36 months." (Endless River Trial Ex 201, Phase III). Based on this provision, they contend that their future profits "formed the very basis" of the provision that TransUnion breached and are analogous to the damages sought in *Midland.*

Contrary to Plaintiff's assertion, the Development Agreement between Endless River and TransUnion was not formed for the direct purpose of allowing Endless River to monetize the

-8-

Quote Exchange by selling the product/company.  Rather, the Agreement was primarily a service contract through which Endless River would provide its expertise to TransUnion to help develop the Quote Exchange.  The contract does not address obtaining customers, does not require that the Quote Exchange be marketed, sold, or licensed, and does not define an expected amount of profit or minimum value that the parties should expect to make if the product was launched.   It defines a profit sharing percentage split between the parties if the Quote Exchange does launch while the Agreement is in force.  However, the completion of the Agreement does not require a product launch, and allows TransUnion to unilaterally terminate the Agreement prior to any launch or realization of profit, which it did.  The contract does permit Endless River to "continue to market and monetize the TU developed code," should TransUnion terminate the Agreement. It does not require that it do so.  TransUnion has no contractual obligation, post-termination, with regard to any decision relating to the marketing or monetization of the Quote Exchange.

The Agreement instead focuses on the details of the relationship between Endless River and Trans Union.  It provides that Endless River would be an independent contractor, and would receive a consulting fee for providing their expertise during the development of the Quote Exchange.  It defines the compensation that Endless River was to expect under the contract: $300,000.00 annually for their services, and reimbursement for certain expenses up to $10,000.00 per month.  It further specifies that Endless River was to devote a minimum of 160 man hours to the project each month, and that any hours in excess of that requirement would by billed to TransUnion at a rate of $175 per hour.  Had TransUnion failed to compensate Endless River under these terms, those damages would have been direct damages under the contract. However, Endless River did not allege non-payment under these terms and did not seek damages

for any unpaid compensation or expenses under the contract.[1]  The actual breach that Endless River alleged and proved was that TransUnion failed to timely return the Quote Exchange source code after the contract was terminated. The direct damages associated with this breach would have been a portion of the value of the source code itself.  Endless River did not attempt to define that value and did not seek that value as damages.  Instead it sought to recover allegedly lost profits, which in this case were, losses or injuries that did not flow directly and immediately from the subject matter of the contract or the proven breach, but rather were indirect losses not invariably tied to the contract's terms.  The lost profit damages sought in this case require proof of more than just a breach of the Agreement.  They rely on an additional "link in the causal chain" in order to connect the damages to the contract. *Powell Elec. Sys., Inc. v. Hewlett Packard Co.*, 356 S.W.3d 113 (Tex. App. 2011). Although there is arguably a foreseeable causal link between TransUnion's failure to timely provide the source code, and the lost opportunity for profit, that loss was not a certain consequence of the breach.  The profits Endless River claims to have lost were reliant on future transactions with third parties.  The opportunities lost were not in existence at the time TransUnion terminated the Agreement.  Further, TransUnion was not a party to those transactions and had no contractual obligation to promote or otherwise enable them.

The lost profit damages sought by Plaintiff, and awarded by the jury after trial, could only have been based on the evidence presented by the Plaintiff's expert.  As set forth above, that

---

[1]

Conversely, had Endless River failed to provide services, in the manner and amount defined in the Agreement, TransUnion would have been able to claim the value of those services as direct damages.

evidence calculated lost profits that did not flow directly and immediately from the subject matter of the contract.  The awarded damages, therfore, could only have included consequential damages specifically barred by Section 8.2 of the Development Agreement.  Consequently, the jury's determination of damages must be overturned.

TransUnion also argues that the jury's damage award should be overturned because Illinois law does not permit recovery of expected profits for a new commercial business, and because the Jury did not have a sufficient evidentiary basis upon which it could properly have based its damages finding.  As the Court finds that the only evidence of damages that the Plaintiff presented was a calculation of consequential damages, and those damages are barred by the Development Agreement, there is no need to address these alternative arguments.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Judgment as a Matter of Law is GRANTED, in part.  (ECF #276).   The Judgment is hereby amended as follows: The Court enters Judgment in favor of the Plaintiff and against the Defendant on Count One (Breach of Contract) of its Second Amended Complaint in the amount of zero dollars.  Judgment is entered in favor of the Defendant on all other counts.  All costs, including costs related to the jury, are to be paid by the Defendant.  IT IS SO ORDERED.

Donald C. Nugent
United States District Judge

Date: January 3, 2023

-11-